Mr. Posos, the petitioner in this matter, entered the United States when he was 17 years old, and he has, in fact, lived in the United States since 1980. He is now about 58 years old. He was pre-admitted as a military resident in 1988, and we know that status until August 24, 1982, and that he was a military resident for most of his life. I'm sorry, counsel, we cannot hear you at all again. I think you need to speak directly into the mic. You can't look over. So I'm not sure where you failed to hear me. We didn't hear any of it. We can hear you now. Okay, well, the petitioner has lived in the United States for over 40 years. The petitioner was granted temporary residence May 4, 1988, and he held that status until August 24, 1993, when it was ultimately denied. During that period, on September 24, 1990, he had an occurrence where he was inspected by Border Patrol agents in San Clemente, California. And the Border Patrol officer in San Clemente inspected his I-688 card as proof of his residence, and after he inspected the document, he allowed him to continue into the interior of the United States. It's our contention that that procedurally regular inspection and admission satisfies the requirements of 245A. There's nothing in 245A or 101A13 of the Act that says that this inspection and admission needs to take place at a port of entry. And in fact, the board, in matter of humankind, only indicates that admission is an occurrence where an individual presents himself at an immigration checkpoint and undergoes a procedurally regular inspection and is given permission to enter the country. That's exactly what happened with Mr. Costa. I don't believe that the denial of his temporary residence would revoke that particular admission. It will revoke, as U.S.B. Hernandez-Aredes holds, that that will revoke his admission under the temporary status that he had, but the actual physical inspection and admission did not revoke the denial of his temporary status. So he has been admitted, and is therefore eligible to adjust status to the provisions of the Family Member U.S. Citizen Trial. There is a recent Supreme Court case on voluntary departure. I don't know if you wanted to say anything about that. It came out about a week ago? Yes, Your Honor. The court asked that we address that. I was waiting for you to say something. Right. That case, I believe that under that case, the notice to appear issued against Mr. Costa dated May 2nd. I'm sorry. I'll get a little closer, and hopefully we can get back. But I believe he's eligible for voluntary departure, because the notice to appear in his case dated May 2nd, 2011, doesn't include a time or date. But according to Nick Chavez's Supreme Court decision, I don't believe that his time has been cut off. And therefore, if he has been present physically in the United States for more than a year, he would be eligible for voluntary departure. Do you want to reserve the rest of your time? Yes. Okay. Thank you. Ms. Browning? Thank you, Your Honor. May it please the Court, Rachel Browning for the Attorney General. Can everyone hear me okay? Yes. To obtain adjustment of status to a lawful permanent resident, an applicant must have been, quote, inspected and admitted or paroled into the United States. Thus, it was petitioner's burden to establish by clear and convincing evidence that he was lawfully present pursuant to a previous admission. And because he failed to meet that burden, the agency properly concluded that he was ineligible for adjustment of status. The cases on which petitioner relies do not dictate a contrary result. And if we begin with the statute, the statutory definition of admission states that it's a lawful entry into the United States after inspection and authorization. And while the courts and the statute recognize certain situations in which an individual can have an admission by operation of law, those are the two, the two distinctions are admissions by operation of law and admissions at a port of entry. There are no cases that I'm aware of, Petitioner cites none, that indicate that simply by passing inspection at an interior location, where the purpose is merely to verify that one has status to remain in the United States, that that qualifies as a distinct admission. And the board's decision in Bluonton reinforces this notion because they're very specific about referring to procedural regularity versus substantially legal. Or procedural regularity, which simply means when you come through a port of entry, there are a number of things that an officer can do. One of which is simply to wave you through that because you've nevertheless come through a port of entry, the board recognizes that that for purposes of adjustment of status can be designated as an admission. But that's what matter of Bluonton stands for. To the extent that Petitioner relies on the Fifth Circuit's decision in Gomez, Gomez likewise makes the same distinction regarding admissions as a matter of law versus admissions at a port of entry. And it specifically distinguished this court's decision in Hernandez-Arias for that very reason. Because while this court recognized that it was possible for the admission as a temporary resident, which is what Petitioner achieved for those five years, the court decided that it did not need to decide whether that constituted an admission as a matter of law. Because by regulation, the plain language of the regulation, once that status was terminated, the individual reverted back to the status that he previously held, which was in the United States without admission or parole. What distinguished Gomez was because while the individual held temporary status, he had left the country and re-entered with that status. And the Fifth Circuit found that that was a distinct event in and of itself that was not vitiated by the later revocation of temporary residency. And that is not what happened in this case. Petitioner never left the country. And the immigration judge, you know, questioned Petitioner at length about this specific issue to make sure. And over and over again when he was asked, Petitioner, you know, confirmed, admitted that he'd never left the United States. He'd never proceeded through a port of entry where he showed his immigration status and was admitted because of that status. The only times he left the country and re-entered were on foot, the last time he was apprehended in the trunk of a car. The only time when he passed through the interior inspection, again, that was merely to verify that he had the right to remain in the United States. So the government submits that that's not the same kind of independent admission that the Fifth Circuit found distinguished that case from this court's decision in Hernandez-Arias. We've submit that the Petitioner in this case is in the same position as the Petitioner in Hernandez-Arias. He was in the United States without a prior admission. He had temporary. Sorry, Your Honor. Assuming that we Assuming we agree with you on adjustment of status, just for sake of argument, what would be your reasoning as to why you think we should not grant relief and remand on voluntary departure? Well, actually, Your Honor, I was going to get to that, and our position is that the case should be remanded for voluntary departure, assuming Petitioner still wants to request that form of relief. Because it is true that the immigration judge and the board essentially pre-terminated the application on the finding at the time prior to Pereira even, you know, based on the finding that he did not have one year of physical presence after, you know, between when he was apprehended in service of the NTA. So the court, you know, we were fine with the court remanding for the limited purpose of, you know, the board and the judge to revisit that issue because they would need to, obviously, there are other criteria, and Petitioner would need to establish that he is able and willing to depart voluntarily at the time instructed. So that's our position. Yes, it's voluntary departure, but it involves the same statutory provision as was at issue in Chavez, so it makes sense for the board to revisit that in the context of voluntary departure. Okay, thank you. I believe I've covered everything with respect to the adjustment of status issue. If there are no further questions, I'll just rest on the rest of our arguments in the brief. All right. Thank you, counsel. No questions here. Mr. Self? Your Honors, I would reiterate that neither 101A, 13, or 245A indicate that this inspection and admission needs to occur at a border entry. They only indicate inspection and admission and then permission that the party is allowed to then proceed into the United States. The border checkpoint at San Clemente is, I believe, about 60 to 70 miles from the border. It is manned by border patrol agents. It is set up exactly as the border crossing port of entry is as well. They are there to either inspect and allow someone to enter or to detain them and process them for removal. It is a border checkpoint, and it functions exactly as a port of entry. It's a secondary stop for the port of entry at San Ysidro. So I believe that that sort of inspection and permission to enter would qualify as an admission under the law. And that's what happens here. I urge the court to examine issues of where this inspection and admission can take place, because I believe that there are inspections that occur in many different places that are not at a port of entry, that are then constructed as a port of entry inspection. They occur at airports all over the country. They occur in ICE facilities all over the country. They occur in many places or any place where an immigration officer is making that decision about an immigrant. Your Honor, other than that, I pray that the court will allow him to continue with his questioning. Thank you, Your Honor.
judges: Wardlaw, Gould, Owens